NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0598n.06

Case No. 15-3040

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 21, 2015
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| EARNEST McCOWEN, et al., | ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE SOUTHERN DISTRICT OF |
| VILLAGE OF LINCOLN HEIGHTS, et al., | ) OHIO |
| | ) |
| Defendants-Appellees. | ) |
| | ) |
| | ) |

BEFORE: SUTTON and DONALD, Circuit Judges; ZOUHARY, District Judge.[*]

SUTTON, Circuit Judge. When Earnest McCowen and Jamil Turner became part-time firefighters for the Village of Lincoln Heights, the Village told them to seek certification as Emergency Medical Technicians, otherwise known as EMTs. Ten months later, after they had failed to gain the required certification, the Village fired them. They sued their employer, alleging that their discharge violated Title VII's anti-retaliation provision as well as a similar Ohio provision. The district court granted the Village's motion for summary judgment because McCowen and Turner did not show that their employer's stated reasons for firing them were pretextual. We affirm.

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

The Lincoln Heights fire station has two types of workers: volunteers and part-timers. Part-time employees have regularly scheduled shifts and are paid by the hour. If the department needs assistance on a fire run, it calls in volunteers, who are (despite their title) paid by the run. The Lincoln Heights station also performs two types of work: It puts out fires, and it responds to emergency-medical calls. Anyone certified as a firefighter can participate in fire runs; anyone certified as an EMT can serve on a medical run; and anyone with dual certification can do both. About ninety percent of the calls received by the Lincoln Heights fire department are emergency-medical calls. State law requires at least two EMTs to go on medical runs, Ohio Rev. Code Ann. § 4765.43(D), and departmental policy requires three firefighters to respond to a fire call.

McCowen and Turner were familiar with these policies because they grew up in the Lincoln Heights fire station, where their fathers were firefighters. As children, they served as "fire cadets," helping out around the station and cleaning the equipment. During this time, McCowen (and to a lesser extent Turner) grew close to another firefighter, Michael Solomon. Solomon described himself as a "mentor[]" to both of them. R. 10-3 at 14.

Following in their fathers' footsteps, McCowen and Turner took a training course in high school and earned their firefighting certifications. As part of the course, both men received training to become EMTs. But Turner failed the final certification test, and McCowen declined to take it. Nonetheless, because they remained qualified firefighters, the station hired them as volunteers in 2006. McCowen and Turner tried once again to become EMTs in 2009, when the city paid for them to take a training class. They took the class but failed the state certification test.

In late 2011, Solomon, by then the department's fire chief, sought funding to hire two part-time employees. At the time, Solomon was scheduling two part-timers, both dual-certified,

for each shift. Because it took a third firefighter to operate the truck, the part-timers had to call in a volunteer whenever they went on a fire run. Solomon hoped that hiring a few more part-time employees would enable the department to meet its staffing needs without routinely requesting volunteers. When he received approval from the city council, he promoted McCowen and Turner to part-time status, effective January 1, 2012.

One day before McCowen and Turner were to begin, the fire department held an officers' meeting, at which the two new part-timers were not present. During the meeting, some firefighters expressed concern that McCowen and Turner would be paid at the same rate as those who were dual-certified. Others complained that McCowen and Turner would get to wait back at the station during medical runs. Stephanie Dumas, the Village Manager, had a heated exchange with Solomon about his decision to promote the two young firefighters.

After this meeting, according to some witnesses, the officers decided that McCowen and Turner should try to obtain EMT certification, though they would not be required to do so. Others claim that dual certification was mandatory: If McCowen and Turner did not pass the state exam within a year, they would be demoted to volunteer status or fired. All agree that the officers wanted McCowen and Turner to obtain their certifications and that the Fire Department conveyed this desire to both firefighters. And McCowen and Turner both understood they needed to get the certification. During his deposition, McCowen confirmed that "our fire chiefs wanted us to try to get our EMT," R. 10-1 at 30, adding later, "I took it if I wanted to do this job, I've got to get my EMT," *id.* at 58. Turner was equally clear: "[The Assistant Chief] wants us to have—get our EMT. . . . [Chief Solomon] wants us to get—wants us to get our EMT." R. 10-2 at 39.

3

In January 2012, Solomon filed an internal complaint alleging that Dumas had sexually harassed him. The complaint escalated into a lawsuit, with the fire chief asserting that Dumas had retaliated against him in violation of state law.

At roughly the same time, McCowen and Turner started their jobs as part-time employees, but they declined to register for the first available EMT course, apparently because they could not pay the tuition. Although they tried to sign up for a certification course in June, that class was cancelled due to low enrollment, and they did not at that point sign up for another class elsewhere. They planned to register when the course was offered at the same place again in January 2013, but, before they could do so, Dumas intervened. In late October 2012, she learned that McCowen and Turner had not yet obtained dual certification and would be unable to do so before the end of the year. Citing their lack of certification, she asked Solomon to fire them, in what the fire chief later described as an attempt to "humiliate" him by making him discharge his two protégés. R. 12-2 at 11–12. On October 29, Solomon delivered the bad news to McCowen and Turner.

After exhausting their administrative remedies, the two firefighters filed this lawsuit against the Village of Lincoln Heights and Dumas. They alleged unlawful retaliation under Title VII and state law, claiming that the discharge of Solomon's friends in the office was a means of punishing Solomon for his lawsuit. The district court granted summary judgment to Lincoln Heights and Dumas. The court found that the two firefighters had set forth a prima facie case of retaliation but could not show that the Village's asserted reason for their firing—their lack of dual certification—was pretextual. McCowen and Turner appeal.

Title VII prohibits employers from discriminating against an employee "because he has opposed" an unlawful employment practice or "because he has made a charge, testified, assisted,

4

or participated in any manner in an investigation, proceeding, or hearing" about such a practice. 42 U.S.C. § 2000e-3(a). Ohio's Fair Employment Practices Act is similar. Ohio Rev. Code Ann. § 4112.02(I). When plaintiffs allege retaliation under both laws and present circumstantial evidence to prove their case, as McCowen and Turner do here, we analyze the two claims under the same test. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008).

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), plaintiffs must first make out a prima facie case by showing that: (1) they engaged in protected activity; (2) defendant was aware of the protected activity; (3) plaintiffs suffered an adverse action; and (4) there was a causal connection between the protected activity and the adverse action. *Imwalle*, 515 F.3d at 544. If plaintiffs make this showing, the burden of production shifts to the defendants, who must articulate a "legitimate, nondiscriminatory reason for [their] actions." *Id.* At that point, the burden shifts back to the plaintiffs to prove that the asserted reason is pretextual. *Id.* Plaintiffs may show pretext by proving that the rationale (1) has no basis in fact, (2) did not actually motivate the employer, or (3) was insufficient to warrant the adverse employment action. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007).

We review the district court's summary judgment ruling afresh, *id.* at 593, asking whether the Village and Dumas are "entitled to judgment as a matter of law" because "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). The parties spill considerable ink wrangling over two threshold issues: whether the two firefighters may bring a retaliation claim based on protected activity by Solomon, *see Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174–75, 178 (2011), and whether the plaintiffs have made out a prima facie case. We need not resolve either argument. Even assuming they may bring these claims under *Thompson* and even assuming that McCowen and Turner have established a prima facie case, Lincoln Heights and

Dumas have articulated a legitimate, nondiscriminatory reason for the discharge—and the firefighters have not rebutted that reason by showing pretext.

The Village justified the firing on the ground that McCowen and Turner did not obtain their EMT certifications. And the firefighters have not established a cognizable claim of pretext by any of the permissible paths.

*First*, the Village's stated rationale has a basis in fact. As McCowen and Turner concede, they did not obtain dual certification despite being told to seek it. Both men also admitted that obtaining the certification would better equip them to "help out the department." R. 10-2 at 12–13. Confirming that this was not a contrived requirement, the Village had paid for them to take the required course in 2009—and Dumas said she would consider rehiring them if they got the certification. Ninety percent of the Village's runs, moreover, required employees with EMT certification. When these calls came in, McCowen and Turner generally were unable to assist and had to stay at the station. Long before the lawsuit between Solomon and Dumas, other employees had complained about McCowen and Turner's lack of dual certification, and other fire departments in the area required firefighters to be EMTs. On this record, the Village grounded its stated reason for discharging McCowen and Turner in fact.

*Second*, McCowen and Turner have failed to show that the Village was motivated by something other than their lack of dual certification. At the time of their discharge, all other part-time firefighters in Lincoln Heights (except Chief Solomon) were EMTs. The Village, indeed, eventually adopted a dual-certification requirement. Dumas, as noted, also said that she would consider rehiring McCowen and Turner if they obtained their certifications. Yet the two firefighters never did so—and according to their attorney they still have not done so to this day. Over eight months elapsed between the filing of Solomon's lawsuit (February 22) and the firing

of Turner and McCowen (October 29)—longer if the clock starts ticking at the time of Solomon's internal complaint in January. At the very least, this substantial gap in time casts doubt on any link between Solomon's protected activity and the Village's discharge decision. In the context of a prima facie case, we have held that the passage of four months is enough to defeat a presumption of causation, *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (two to five months); *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272–73 (6th Cir. 1986) (four months), and we draw a similar implication in addressing McCowen and Turner's claims of pretext. Finally, an independent body—the Village Personnel and Appeals Board—affirmed the two firefighters' discharge, validating Dumas's stated reasons for firing them. The firefighters have not shown that unlawful motives drove the discharge. *Imwalle*, 515 F.3d at 547.

*Third*, the Village's articulated rationale sufficed to justify the firing, as McCowen and Turner concede. Because the discharged firefighters have not presented evidence that similarly situated employees were treated differently, and because such a high percentage of the department's runs required EMTs, the Village could reasonably fire McCowen and Turner for failing to obtain dual certification. *See Ladd v. Grand Truck W. R.R.*, 552 F.3d 495, 503 (6th Cir. 2009).

McCowen and Turner offer several contrary arguments. They claim that the district court applied the wrong legal standard by requiring them to show that "retaliation was the *only* factor motivating their termination." *McCowen v. Village of Lincoln Heights*, No. 1:13cv0520 (WOB–KKL), 2014 WL 7227841, at *7 (S.D. Ohio Dec. 17, 2014). That indeed was a mistake or at least a slip of the tongue. We have held that "Title VII retaliation claims 'must be proved according to traditional principles of but-for causation,'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533

(2013)), and that actions may have more than one "but-for" cause, *see Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315–16, 321 (6th Cir. 2012) (en banc); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845–46 & n.5 (2d Cir. 2013); *see also Dobbs' Law of Torts* § 186 (2d ed. 2011). But even if the district court misstated the standard, any error was harmless. McCowen and Turner have not shown that illegal motives were a "but-for" cause of their firing, because they have not shown that the articulated rationale was pretextual.

The firefighters next claim that they can show pretext because their firing had undesirable consequences. In the absence of a third firefighter on some shifts, they claim, the Village has recently been unable to respond to about fifteen percent of its calls. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc). But to demonstrate that the Village was motivated by something other than its stated rationale, McCowen and Turner must make a "two-part showing": They must prove that the Village's asserted reasons were false *and* that retaliation was the motive. *Imwalle*, 515 F.3d at 544, 547. In highlighting the (alleged) negative consequences of the Village's actions, McCowen and Turner speak only to the first showing, implying that the stated rationale is unreasonable. But they do not point to any evidence that the actual motive was retaliation. The Village's decision also was a sensible response to the complaints made by other employees, who had nothing to do with the Dumas/Solomon dispute. Recall that several firefighters were upset that McCowen and Turner received the same salary as firefighters with dual certifications, and others were angry that both men stayed at the station while dual-certified employees went on medical runs. Discharging McCowen and Turner addressed these complaints, and the Village could legitimately decide that promoting department morale outweighed the costs of decreased staffing. For similar reasons, the fact that McCowen

and Turner were fired (rather than demoted to volunteer status) does not demonstrate pretext. If the Village could do the one, it could do the other.

Finally, McCowen and Turner argue that, at the time of their firing, Lincoln Heights did not have an official policy requiring firefighters to obtain dual certification. Both firefighters, however, testified to the contrary at their depositions. Even if we credit their new assertions, that would not change our conclusion. McCowen and Turner conceded that they were told to seek dual certification after the officers' meeting in December 2011 and knew they needed to obtain dual certification to keep their jobs, making the absence of a formal policy immaterial to the Village's stated rationale. Our holding likewise does not hinge on whether the Village *required* McCowen and Turner to become EMTs or merely recommended that they do so. The firefighters were told that they could make themselves more useful to the department by obtaining dual certification, since doing so would enable them to respond to ninety percent of the station's calls. Their failure to follow through on the Village's recommendation provides a non-retaliatory reason to discharge them. Nor does it make a difference whether McCowen and Turner were told to obtain the certification within a year or were given no time limit. After ten months had gone by and after several more would have gone by before the firefighters could complete the course, the Village reasonably could have decided that it had given them enough time to obtain the certifications.

For these reasons, we affirm.