NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0800n.06

No. 15-3486

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 09, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| REGINALD LAUGHLIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| | ) | |
| CITY OF CLEVELAND; DOMINIC | ) | |
| SANTORA, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE: COLE, Chief Judge; SUTTON, Circuit Judge; BELL, District Judge.**[*]

**PER CURIAM.** Appellant Reginald Laughlin is an African-American male who was, briefly, a sewer service worker at the City of Cleveland's Department of Public Utilities. After his termination, Laughlin filed a complaint alleging that he received negative performance reviews and, as a result, was fired in retaliation for complaining about the hostile work environment caused by Defendant-Appellee Dominic Santora's racist and sexist comments. The district court granted Defendants' motion for summary judgment. We affirm.

I.

In October 2012, the City of Cleveland hired Laughlin as a sewer service worker. Under the terms of a collective bargaining agreement, permanent employment was conditioned on his satisfactory performance during a 180-day probationary period. During this period, Laughlin

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

rotated between three different crews to determine the best fit and received a written performance review for each 30-day period.

Appellee Dominic Santora, a Caucasian male and foreman of a crew Laughlin worked on, completed Laughlin's performance review for the first 30-day period. Santora had worked with Laughlin for only a few days before writing the review, but noted that Laughlin's performance was satisfactory.

Laughlin continued working with Santora for the next 30-day period. Laughlin did not enjoy working on Santora's crew because Santora "'regularly' engaged in conduct degrading to women, and to only African-American or black women. Santora referred to these females as 'bitches' when referencing them and their anatomy. The term 'regularly' meant comments of this nature were made at least three or four times a week when [Laughlin] worked with Santora." (Appellant Br. at 5.) Laughlin told Santora that he found the comments offensive. Laughlin does not contend that Santora made any derogatory comments about members of his own crew, other City of Cleveland employees, or Laughlin himself.

After working together for a month, Santora gave Laughlin a negative review for the second 30-day period ending December 14, 2012. The review is not dated, but Santora stated that he usually completed the reviews within a week of the period ending. The review noted that Laughlin "wasn't retaining the knowledge needed to perform job duties," "was not open to constructive criticism," walked away from difficult tasks, and would ignore Santora and other coworkers. (R. 17-6 at 3.) Laughlin disputes the accuracy of these statements, and contends that he made Santora aware of a hearing impediment that could have been a cause of the criticism. Laughlin also contends that during this review period, Santora told him that his "work skills were better than some sewer workers who had worked for the City of Cleveland for years." (R. 18-1.)

2

By December 27, 2012, Laughlin had had enough of Santora's comments and went to Sewer Maintenance Superintendent Daniel Tomko to complain. Laughlin states that he told Tomko that Santora "had issues . . . with African-American women and just African-American men period" and asked Tomko for an incident complaint form. (R. 17-2 at 29.) Tomko gave Laughlin the complaint form and Laughlin filled it out "that day or the next day." (*Id.* at 31.) On the advice of his union steward, however, Laughlin decided to wait until the probationary period was over before turning the form in. Tomko also acknowledges giving a blank incident form to either Santora or Michael Smith, Santora's supervisor, which was filled out by Santora and stamped as received at 4:00 p.m. on December 27.

On December 28, Laughlin was transferred to a different crew run by foreman Phillip Lewis. Workers on Lewis's crew commented that Laughlin was a subpar worker when he arrived. After working with Laughlin for 5 days, Lewis wrote a negative performance review, rating Laughlin as a "below average" employee, and noting that he needed to show initiative and had below average job knowledge.

Laughlin was fired on January 31, 2013, a little more than halfway through the probationary period. The decision was made by the Commissioner of the City's Division of Water Pollution Control. Tomko had recommended Laughlin's termination based on the two negative performance reviews and on Michael Smith's recommendation. When Danyelle Conner, a human resources manager, told Laughlin he was being terminated, Laughlin told her of his problems with Santora and that he felt the firing was in retaliation for his complaints about Santora. Conner conducted an investigation and concluded that Laughlin's complaints did not affect the decision to fire him.

II.

Laughlin brings a claim of retaliation under both Title VII and Ohio state law, arguing that he was given the negative performance reviews and terminated because he complained of the hostile work environment caused by Santora's racist and sexist comments. Ohio Revised Code Chapter 4112 is "Title VII's Ohio state corollary." *Vehar v. Cole Nat'l Grp., Inc.*, 251 F. App'x 993, 1002 (6th Cir. 2007). Ohio courts have held that "federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of [Revised Code] Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981) (collecting cases). "When plaintiffs allege retaliation under both laws and present circumstantial evidence to prove their case, . . . we analyze the two claims under the same test." *McCowen v. Vill. of Lincoln Heights*, No. 15-3040, 2015 WL 4978979, at *3 (6th Cir. Aug. 21, 2015).

## A. Title VII Retaliation

To make a prima facie showing of Title VII retaliation, an employee must show "(1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). If the employee makes this showing, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason for its actions." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). If the employer meets this burden, the employee must demonstrate that the legitimate reason offered by the employer "was a pretext designed to mask retaliation." *Id.*

The district court held that Laughlin failed to make a prima facie showing of retaliation because he did not show that he engaged in protected activity and, even if he had, he did not demonstrate a causal connection between the protected activity and the adverse employment action. On de novo review, *Mounts v. Grand Trunk W. R.R.*, 198 F.3d 578, 580 (6th Cir. 2000), we find that Laughlin has failed to demonstrate a causal connection between his complaints and his termination and, accordingly, we affirm.[1]

## B. Causation

To establish causation, Title VII plaintiffs must show that their "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). Laughlin makes no such showing, because the evidence indicates that he was fired due to his poor job performance. Laughlin received two negative performance evaluations (out of three) during his three-and-a-half month stint with the City of Cleveland. Santora filed one of those evaluations. Laughlin points out that Santora wrote the negative performance evaluation shortly after Laughlin told Santora his comments were inappropriate. But "temporal proximity alone [is] not particularly compelling [when] the plaintiff's retaliation case [is] otherwise weak, and there [is] substantial evidence supporting the defendant's version of the events." *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000).

That is the case here. Santora's evaluation noted, among other things, that Laughlin was "not familiar with [the] tools of the trade," "wasn't retaining the knowledge needed to perform job duties," and "would completely shut down" upon receiving constructive criticism. (R. 17-6 at 3.) Laughlin's coworkers testified similarly. Ted Arensberg, a worker on Lewis's crew, stated

---

[1] The Court has also reviewed the district court's conclusion that Laughlin did not engage in protected activity because it was unreasonable for him to believe that a racially hostile work environment existed. Because Laughlin's claim would fail even if he was engaged in protected activity, we need not address this finding.

that when Laughlin first came over from Santora's crew, he "was a little slow." (*Id.* at 69.) Another worker on Lewis's crew noted that Laughlin "was clueless in the beginning" and "appeared to be sensitive and took constructive feedback personally." (*Id.*) Lewis, who had no knowledge of Laughlin's experience with Santora, filed the second negative performance evaluation "based . . . strictly on [Laughlin's] performance." (*Id.* at 68.) And Conner, the human resources manager, conducted a full investigation and concluded that Laughlin's complaints did not affect the decision to fire him. Laughlin offers no rebuttal to this barrage of evidence, and all of it suggests that, while his poor performance was a but-for cause of his firing, his complaints about Santora's comments were not.

Finally, although the district court incorrectly stated that Laughlin had to show that retaliation was the *sole* cause of his discharge, *see Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315-16, 321 (6th Cir. 2012) (en banc), that error was harmless. While events may have more than one but-for cause, Laughlin has not shown that retaliation was one such cause in this case.

For these reasons, we affirm.