James KIMBLE, Plaintiff,

v.

INTERMETRO INDUSTRIES, Defendant.

No. 3:02 CV 7515.

United States District Court, N.D. Ohio, Western Division.

Oct. 23, 2003.

Thomas A. Sobecki, Toledo, OH, for James Kimble, Plaintiff.

Angelique Paul Newcomb, Susan Porter, Schottenstein, Zox & Dunn, Columbus, OH, Jeffrey R. Carius, InterMetro Industries, Sausalito, CA, for Intermetro Industries, Defendant.

## ORDER

CARR, District Judge.

This is an employment discrimination case in which plaintiff James Kimble alleges that his employer, defendant Intermetro Industries, discriminated against him based on his gender. This case was originally filed in the Seneca County Court of Common Pleas. Defendant removed the case to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Pending is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the following reasons, defendant's motion shall be granted.

## BACKGROUND

Plaintiff James Kimble ("Kimble") commenced his employment with defendant Intermetro Industries ("Intermetro") in May of 1995. (Doc. 19 at 1.) Intermetro produces shelving products that are used in the medical and commercial food industries. On March 1, Kimble slipped while working for Intermetro, injuring his back. Kimble received workers' compensation

for medical benefits and, eventually, had back surgery on October 4, 1996. Kimble returned to work four months later, at which time he began having difficulties with the physical demands required by his work. Due to these physical difficulties, plaintiff Kimble requested to be reassigned. Defendant Intermetro granted Kimble's request and transferred him to a position in the Injection Molding department where fourteen different presses are used to manufacture shelving parts.

In September of 1997, Kimble began having back problems again. After a second surgery and extensive physical therapy, Kimble returned to work under medical restrictions in February of 2000. Kimble informed Carol Middleton ("Middleton"), Intermetro's Human Resources representative, that he could not operate the end beam press (Press 3) because it was too physically demanding on his back. Middleton informed Kimble that a medical evaluation would take place to determine whether Press 3 was within his medical restrictions. After two medical evaluations, it was determined that Kimble could not operate Press 3 and that his medical restrictions were most likely permanent.

Intermetro promulgates a policy requiring employees working in the Injection Molding department to operate all the presses on a rotating basis. This policy exists to promote equality in Intermetro's workplace, including overtime allotment, and to prevent allegations of favoritism. After Kimble was medically evaluated, and in light of its policy, Intermetro decided to terminate Kimble. Thereafter, in July of 2000, the union filed a grievance on Kimble's behalf, which the union staff representative eventually dropped.

Plaintiff Kimble worked third shift at defendant Intermetro's plant in Fostoria, Ohio. (Doc. 28 at 2; Doc. 19 at 1.) Though more women than men worked the third shift in the Injection Molding Department at Intermetro, the management team was comprised mostly of men. In June of 2000, Intermetro employed 115 employees at the Fostoria facility, of which sixty-six were men and forty-nine were women. Intermetro's Corporate Vice President of Human Resources, Mr. Thomas Dimmick ("Dimmick"), made the final decision to terminate Kimble.

Ms. Betsy Schalk ("Schalk"), a female formally employed in the Injection Molding department, was also terminated when her physician permanently restricted her from working in Injection Molding due to a Microban allergy. (Doc. 29 at 7; Doc. 28 at 8.) Upon the request of a union representative, Schalk returned to work in the Post Assembly department, where she would not be exposed to Microban. (Doc. 29 at 7.)

Ms. Dianne Benefiel ("Benefiel") is an employee who works in Intermetro's Injection Molding department. Benefiel never works Press 8 when it is performing "flex high sides" nor Press 1 when bus carts are being packed, because these jobs require heavy labor and lifting. (Doc. 28 at 6.) Benefiel has never been permanently restricted from performing any particular job and is physically capable of working all the presses. (Doc. 29, Exh. D at ¶ 3.)

Ms. Wendy Badgett ("Badgett"), another female employee for Intermetro, states that no females in the Injection Molding department work the Ledge Assembly. (Doc. 28 at 5.) The Ledge Assembly work does not require a press to be completed, this work is done manually. (Doc. 29 at 8.)

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

Though plaintiff Kimble urges that this is a traditional discrimination claim, I agree with defendant Intermetro that this is a reverse gender discrimination claim. Because plaintiff cannot make out a prima facie case, Intermetro's motion for summary judgment shall be granted.

■ It is unlawful in Ohio for "any employer, because of the ... sex ... of any person, to discharge without just cause, ... or otherwise to discriminate against that person ... with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." O.R.C. § 4112.02(A). The Ohio Supreme Court has held that the scope of § 4112.02(A) is identical to that of federal anti-discrimination statutes. Thus, evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be found. *Plumbers & Steamfitters Comm. v. Ohio Civil Rights Comm'n.,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981).

■ The Sixth Circuit has altered the test for a prima facie case under Title VII for plaintiffs alleging reverse discrimination. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 801 (6th Cir.1994). In *Murray v. Thistledown Racing Club,* 770 F.2d 63 (6th Cir.1985), the Sixth Circuit explained:

In our view, the "reverse discrimination" complainant bears the burden of demonstrating that he was intentionally discriminated against "despite his majority status." We agree with the district court that a prima facie case of "reverse discrimination" is established upon a showing [1] that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority," and

upon a showing [2] that the employer treated differently employees who were similarly situated but not members of the protected group.

*Id.* at 67 (citations omitted). Thus, to establish a prima facie case against Intermetro, plaintiff Kimble must not only show that defendant Intermetro is the unusual employer that discriminates against male employees, he must also produce evidence that similarly situated female employees were treated better than he. *Wessel v. The Goodyear Tire & Rubber Co.,* 2002 WL 31728959 at *11 (N.D.Ohio, Nov.21, 2002)

## A. Background Circumstances

■ Plaintiff Kimble cannot establish sufficient background circumstances showing that defendant Intermetro is the unusual employer who discriminates against males, thus he cannot establish this prong of the prima facie case of reverse sex discrimination.

Although the Sixth Circuit has not provided a precise description of what a plaintiff must prove to establish "background circumstance" essential to a reverse discrimination claim, the District Court for the Eastern District of Michigan cited a number of examples of what would constitute such special circumstances:

> For cases in which plaintiffs did establish this first element of their reverse discrimination cases, *see, e.g., Reynolds v. School Dist. No. 1,* 69 F.3d 1523 (10th Cir.1995) (the plaintiff was the only white employee in an otherwise all-Hispanic department and Hispanic supervisors made most employment decisions); *Bishopp v. District of Columbia,* 252 U.S.App. D.C. 156, 788 F.2d 781 (D.C.Cir.1986) (the defendant promoted less qualified minority employee; use of subjective rather than objective criteria; internal and external pressure to favor minorities); *Lanphear v. Prokop,* 227 U.S.App. D.C. 89, 703 F.2d 1311

(D.C.Cir.1983) (qualified white passed over for black whose qualifications were not fully checked; pressure to increase minority percentages). We cite ... [these Title VII] cases to illustrate the kind of evidence plaintiff might have brought forward, if it had been available, to satisfy the first element of his prima facie case. [*Allen v. Comprehensive Health Serv.,*] 222 Mich.App. 426, 434, n. 6, 564 N.W.2d 914 [ (1997). ] *See also, Murray v. Thistledown Racing,* 770 F.2d [63,] 68 [ (6th Cir.1985) ] (suggesting that reverse discrimination plaintiff might have satisfied the "background circumstances" prong of the test had he been able to show that the employment practices at issue were grounded in an affirmative action program.)

*Comiskey v. Automotive Indus. Action Group,* 40 F.Supp.2d 877, 892 (E.D.Mich. 1999).

Here, plaintiff Kimble has not attempted to offer background circumstances suggesting that defendant Intermetro is the unusual employer who discriminates against the majority. Moreover, the undisputed evidence demonstrates that Kimble could not meet this burden. First, although more women than men worked the third shift in the Injection Molding department with Kimble, the management team where Kimble worked was comprised mostly of men. Second, in 2000, the year of Kimble's discharge, Intermetro's Fostoria facility employed sixty-six men and forty-nine women. Finally, there is no evidence that suggests that there is internal or external pressure to favor women at Intermetro's Fostoria facility. Because plaintiff Kimble cannot establish sufficient background circumstances to show that Intermetro is the unusual employer who discriminates against males, he cannot establish this prong of the prima facie case of reverse sex discrimination.

## B. Disparate Treatment

Even assuming plaintiff Kimble could establish the sufficient "background circumstances" element of a prima facie case for reverse sex discrimination, he cannot establish that similarly situated women employees were treated more favorably than he under equivalent circumstances.

■■■ To establish that other non-minority employees were treated more favorably, Kimble "must show that the 'comparables' are similarly situated *in all respects.*" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992): (emphasis in original). The Sixth Circuit in *Mitchell* stated:

> [T]o be deemed "similarly situated", the individual with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.* That is, the circumstance surrounding Kimble's discharge must be "nearly identical" with those surrounding the employees alleged to have been treated more favorably than he. *Payne v. Illinois Central Gulf R.R.*, 665 F.Supp. 1308, 1333 (W.D.Tenn.1987).

This court has addressed whether a plaintiff failed to show that he was similarly situated with other female employees, where the plaintiff violated the employer's policy that female co-employees had not. *Wessel*, 2002 WL 31728959 at *12. In *Wessel*, the plaintiff male employee was terminated after a compliant was filed that the plaintiff violated the employer's zero tolerance policy regarding sexual harassment. *Id.* Because the terminated employee could not establish that a female co-worker had likewise violated the policy, he could not establish that he was treated differently than a similarly situated female employee. *Id.*

Here, Kimble cannot establish that a similarly situated female violated Intermetro's policy that all employees working in the Injection Molding department be physically capable of operating all the presses, yet remained employed by Intermetro. Though Kimble submits affidavits from several female employees, none shows that women are not capable of operating all the presses. While there is some evidence that some women are not required to perform one of the functions performed by Press 1 and Press 8, that is not factually identical to Kimble's situation. Aside from those two functions, women are required to run both Press 1 and Press 8, as well as the press that Kimble was not able to run, Press 3. Next, Kimble points to Ms. Badgett's affidavit stating that no females in the Injection Molding department at Intermetro are required, and thus do not, work the Ledge Assembly. Because the Ledge Assembly does not require the use of a press, this argument is wholly irrelevant as to whether another female employee violated Intermetro's policy and was subsequently treated different than Kimble. For these reasons, Kimble cannot establish that similarly situated women employees were treated more favorably than he under equivalent circumstances.

## C. Pretext

■ Defendant Intermetro discharged plaintiff Kimble for a legitimate, non-discriminatory reason, violation of an employment policy. Kimble cannot establish that Intermetro's proffered reason is pretextual.

To establish that Intermetro's reason for discharging him was a pretextual, Kimble must do more than simply impugn the legitimacy of the asserted justification. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Kimble must also adduce evidence of Intermetro's discriminatory animus by showing both that the offered reason was false, and that discrimination was the real reason. *Id.* at 515, 113 S.Ct. 2742.

Here, Kimble points to a female co-employee, Ms. Schalk, who was permitted to transfer to another department due to an allergic reaction to a substance in Injection Molding department. First, Kimble, on his own request, was granted an initial transfer to the Injection Molding department at Intermetro. Second, Schalk, like Kimble, was terminated when she was restricted from working in the Injection Molding department due to her Microban allergy. Schalk's return to Intermetro, and ultimately her transfer out of the Injection Molding department, was undertaken at the request of the union, otherwise it would not have occurred. No union representative ever came forward with such a request for Kimble. Instead, the union eventually dropped the grievance it filed on Kimble's behalf. This distinguishes Kimble's situation from Schalk's.

Thus, even if Kimble could establish a prima facie case of reverse sex discrimination, summary judgment in favor of Intermetro is proper because Kimble failed to present evidence that raises a triable issue of fact with respect to pretext.

## CONCLUSION

In light of the foregoing, it is

ORDERED THAT defendant Intermetro's motion for summary judgment be, and hereby is, granted.

**So ordered.**